UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF ALABAMA

FILED

2017 APR 28  A 11: 09

U.S. DISTRICT COURT

| | | |
|---|---|---|
| Ronald R. Glasgow, | ( | |
| Plaintiff | ( | **1:17-cv-00688-SGC** |
| V. | ( | Jury Trial (X) Yes |
| James N. Mattis, Secretary, | ( | |
| Department of Defense (Defense | ( | |
| Intelligence Agency),   Agency | ( | |
| Vincent R. Stewart, Director | ( | |
| Defendant | ( | |

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

A.   Plaintiff

Ronald R. Glasgow

261 Sardis Rd.

Cragford, Alabama  36255

404-579-5162

Rglasgow51@yahoo.com

B.   Defendant

James N. Mattis, Secretary

Department of Defense

(Defense Intelligence Agency), Vincent R. Stewart, Director

200 McDill Blvd.

Washington, DC  20340-5100 (202-231-5554)

    C.    The address that the Plaintiff sought employment is:

Defense Intelligence Agency

200 McDill Blvd.

Washington, DC 20340-5100

    D.    Basis for Jurisdiction

1) Title VII of the Civil Rights Act of 1964, as amended and codified, 42U.S.C. Section 2000E to 2000E-17 (race, gender, religion, national origin, to also include retaliation.)
2) Age Discrimination in Employment Act of 1967, as amended and codified, 29 U.S.C. Section 621-634
3) Americans With Disability Act of 1990, as amended and codified, 42U.S.C. Section 12112 to 12117
4) All other relevant state and federal laws to include equal employment opportunity and constitutional rights, and also federal regulations.

    E.    The discriminatory conduct includes but is not limited to:

1) Failure to hire plaintiff
2) Unequal and discriminatory terms and conditions and privilege of employment
3) Retaliation

Other acts found in the EEOC investigation process which were addressed and not addressed by the investigation, due to the fact that the Defendant failed to produce records, and also due to the fact that the EEOC judge refused to provide adequate decisions to Plaintiff's requests relevant to the complaints. Other acts were those of the EEOC Appeals decisions and also the refusal of the Defendant to properly adhere to the Code of Federal Regulations 1614 under Title 29. Such discrimination caused Plaintiff damage.

    F.    Defendant discriminated against Plaintiff based upon Plaintiff's:

1) Race
2) Color
3) Gender/sex
4) National Origin

5) Age (DOB 10-3-55) over the age of 40
6) Disability (Back Injury)
7) Retaliation

### G.   Facts of the Case

1) Plaintiff applied timely to Defendant's Entry Level Job Application A09-026552-02-JER (Drug Program Specialist) on or before May 31, 2010. Plaintiff was informed by email, that his application was received and reviewed.
2) Plaintiff was not given an interview, therefore, was not selected for the position. Plaintiff is a white male, above the age of 40, and on record as having a disability. His actual age at the time of application was 55.
3) Plaintiff exceeded the minimum requirement of having a 4 year bachelor degree.
4) Plaintiff, on his application, stated that he had an A.A. degree, B.S. degree, M.S. degree, and a J.D. Doctorate degree in law. His application stated that he had 18 years of government experience as a police officer and served as a supervisor. Plaintiff also placed on the application that he owned and managed a large business, as additional experience. He also provided that he had state and federal licenses, and that he was a commercial pilot with flight instructor's ratings.
5) Jessica Armstrong, Jessica Donnelly, Michelle Hammerle, and Robert Moore were given formal interviews, face to face, with defendant's agent Curtis Petersen. (Selecting official). 6 other candidates were referred to Curtis Petersen.
6) All 4 selected for the formal face to face interview were below the age of 40, actual ages were in the mid-twenties, and all were in a different protected class than that of the plaintiff.
7) Armstrong is a white female. Donnelly is a white female. Hammerle is a white female. Moore is a white male.
8) All 4 people interviewed only had a 4 year degree and no actual experience listed on their application with drug or urine handling or testing.
9) All 4 interviewed are not on record of having a disability.
10) Curtis Petersen, a black male, GS 14, the selecting official, chose Armstrong for the single position of the job announcement. Petersen had formal EEOC training as a manager and selecting official.
11) In a subsequent EEOC investigation, which produced record, it was found that Armstrong did not have any actual experience handling urine, drugs, or any type of testing experience.
12) Her record of application and record of deposition only indicates that she worked 2 months answering a telephone, correcting grammatical mistakes on paperwork, and performing janitorial duties in a county health department. (deposition pg15,16)
13) Armstrong, in a deposition, stated she never had any training or experience with drugs or health testing. (deposition pg. 16,17,18)
14) Armstrong was 24 years of age when she applied for the job. Plaintiff was 55 years of age when he applied.

15) Armstrong, in her deposition, stated that her personal interview, on May 17, 2010, with Curtis Petersen, was a vital part in acquiring her job. (deposition pg. 25)
16) Armstrong did not list part time employment of Atlantic Tractor on her application, however, in her personal interview, according to the information in her deposition, she stated that Petersen was impressed with this unlisted experience. (deposition pg. 24,25,26)
17) Plaintiff had several years of drug and urine handling/testing, but was not afforded the same personal interview to impress Petersen with this additional information, which was not also on Plaintiff's application.
18) Armstrong stated in her deposition, that the personal interview was an opportunity to provide additional information that was not on her application. (deposition pg. 27)
19) Plaintiff was not afforded the same equal opportunity in employment because he was denied an interview and this caused damage to the plaintiff. Plaintiff's application was available for each and every panel member to review, thus the Defendant had a duty to evaluate the application.
20) Armstrong in her deposition, stated that her interview was very valuable in obtaining employment (deposition pg. 28)
21) Plaintiff contends that he was given disparate treatment which discriminated against him and caused damage.
22) Plaintiff contends that the employment and selection process was flawed with discriminatory methods which caused him damage. Plaintiff contends that the Defendant knew of this flawed system from the past but continued to use the same process.
23) Plaintiff, contends that if interviewed, that he would have provided information that he exceeded ordinary drug and testing experience in that he supervised for several years, subordinates in drug/ testing/urine/handling, which far exceeds any of the 4 candidates that were interviewed and far exceeds the experience of Armstrong.
24) In a federal investigation interview performed by Patricia Poindexter, Noemi Pizzaro-Hyman, who was associated with the Selection Committee, stated on record, that ALL applications were personally reviewed. (ROI 1169)
25) Melissa Daston, Chief of Human Resources, for this Panel Selection Committee, was interviewed by Poindexter, and is on record, stating that she assumed that Plaintiff was a male by gender according to his first name. (ROI 838)
26) James E Rogers, the Team Leader and Ranking Panel member, was in charge of the announcement. In his earlier deposition, Rogers was given the same information that was Plaintiff's application as to the date Plaintiff earned his 4 year degree. Rogers sated that he could easily indicate and derive that Plaintiff was 56-58 years of age as of that date. (deposition pg. 22)
27) Rogers, also in the same deposition, stated that any selection committee employee could easily figure this minimum age of the Plaintiff. (deposition pg. 23) Rogers said that he could determine the approximate age of the Plaintiff on information in the application. (deposition pg. 23,24)
28) Melissa Daston, Chief of Human Resources, for this panel selection, in an earlier federal interview with Patricia Poindexter, stated that the Plaintiff was a male judging by his first name. (ROI 838)
29) James E Rogers, also in his earlier deposition was instructed by Agency counsel John Fraser, not to answer a question concerning Roger's personal knowledge of Plaintiff's experience with drugs

as it relates to his experience as a police officer. Fraser did not object to the question, but simply obstructed the deposition by demanding that Rogers not provide the answer.

30) Curtis Petersen was interviewed by Federal Investigator Patricia Poindexter, on record, and was given a copy of Plaintiff's actual application. Petersen reviewed the application carefully. Petersen's answers to Poindexter's questions were not hypothetical statements because of the fact that Petersen had complete control over the selection process and had earlier access to Plaintiff's application by use of the Defendant's computer system. The Defendant formulated the means and methods of identifying applicants, even though they knew or should have known their system was flawed and created unfair employment practices which evolved to discriminatory employment practices. Petersen made made the pretexual discriminatory statement that he (Petersen) would DISCRIMINATE (his own word) against Plaintiff from selection of the job. (ROI 1260)

31) Petersen said that he would DISCRIMINATE against Plaintiff and not consider him for this entry level job because he (Petersen) would have concerns about Plaintiff being able to be trained and not being able to mold Plaintiff into doing what is necessary to compliment the program, and that the Plaintiff would not listen. (ROI 1273) This was a pretexual statement of discrimination based upon Plaintiff's protected class and caused damage to the Plaintiff.

32) Petersen further, on record, stated that he would DISCRIMINATE against Plaintiff because he has a Juris Doctor Degree which is on the top of the ladder for education. (ROI 1274) Armstrong did not have any advanced degrees. Again, Plaintiff was in a different protected class from Armstrong.

33) Petersen, further on record, stated that he (Petersen) would DISCRIMINATE against Plaintiff because he (Plaintiff) would not listen or learn an entry level position and that it would be too difficult for Plaintiff to learn and stay there. (ROI 1274) Petersen had never met with or interviewed Plaintiff before making these pretexual statements.

34) Petersen further, on record, violates EEOC training and stated that he (Petersen) would DISCRIMINATE against Plaintiff because he would not be able to run that position, run the program, and also stated that with Plaintiff's credentials, that he (Plaintiff) would be moving on. (ROI 1274-1275)

35) Plaintiff contends that these pretexual statements were derived from discriminatory training and actual practice performed by the Defendant. Petersen was a high level manager and actual chose and signed the order selecting Armstrong. These statements indicate a discriminatory animus towards Plaintiff and other who would be in the same protected class as Plaintiff. It would be accurate to assume that the same discriminatory training would be practiced by subordinates that the Defendant has trained in addition to Petersen. These actions and discriminatory practices caused damage to the Plaintiff.

36) Petersen had a copy of Armstrong's application, which she indicated that she would move to another job if she had received this current position. She stated in her application that she wanted a job with the US Navy and that this job, with the Defendant would be a stepping stone to the US Navy job. Petersen saw and had access to Armstrong's application stating this information, but discriminatory stated that Plaintiff would move on.

37) Petersen's statements on record, about Plaintiff moving on, was a pretext to discrimination and a product of the Defendant's animus and illegal employment practices. It would appear that

other employees of the Defendant learned and practiced the same learned discriminatory practices.

38) Petersen had, each year previous to these statements, attended the required EEOC formal classroom training, which taught him the principles of equal employment and discriminatory practices. It is practical to conclude that he passed this information to his subordinates and they performed in the same flawed ways of discrimination.

39) Petersen, on record, stated that if Plaintiff had been given an interview, that possibly he (Petersen) would have found something different. (ROI 1274-1275) This statement solidifies the importance of an interview to the Plaintiff who was in a different protected class from the other 4 individuals that received interviews.   Again, the Defendant controlled all of the means, ways, and functions of the selection process. Plaintiff performed his duty of applying in completion. Defendant's methods of selection were known to have been flawed using a key word search.

40) Petersen had the authority to insure that all applicants had access to equal employment opportunity. Plaintiff was denied this opportunity of an interview, which caused damage.

41)   Plaintiff contends that Defendant and all its agents were trained on the EEOC Revised Enforcement Guidance on Recent Developments in Disparate Treatment Theory, NO 915-002, July 12, 1992, and also other training information on EEOC matters to include employment selection.

42) Petersen and all selection officials had access to Plaintiff's application along with Defendant's agents in the selection process. Plaintiff stated that he had experience running a large business as an owner, and that he was capable of learning. This capability was indicated on Plaintiff's application by obtaining advanced degrees, having a state law enforcement license which took 5 months of classroom training and testing, and by having several federal licenses including commercial pilot's certificate and instructor certificate which also took training and testing. Petersen's pretextual statements that Plaintiff would not be trainable, not run with the program, not be able to be molded and would not listen   show an animus of discriminatory practices. These were not hypothetical statements. These statements were based on knowledge from facts that Defendant had before him. Plaintiff had been promoted to a supervisory position also to indicate his ability to run with the program, in a major police department.

43) Armstrong had no advanced degrees, no training certificates, no job experience as with longevity, and no expert skill as a supervisory. The Defendant chose the way and methods on how they would insure that each application would be reviewed.

44) It was already known that previous attempts to use a key word search of applications, commonly known as resumix, created discriminatory results. The Defendant continued to use this system which caused damage to the Plaintiff. It was banned in some of the departments of the Defendant. It should have been known that it would be discriminatory in all aspects of employment. The Defendant failed to dismantle this system in totality.

45) Petersen's pretextual statements were not hypothetical remarks based on a hypothetical set of facts. He answered in the manner of which he was trained by the Defendant and can only be concluded that all selection agents were trained in the same manner which caused damage to the Plaintiff.

46) The Defendant's key word search program was flawed which made then President Obama file a presidential Order forbidding the government entities from using this flawed method and other

similar flawed methods of government employment processes. Prior to this Order, the Defendant knew of the flawed system, which caused discrimination, but continued to use it.

47) Plaintiff was damaged by continually using flawed employment processes.
48) Keith Wade, of the Department of Human Resources, stated on record, that the Defendant does not use key word searches in employment selection. (ROI 29)
49) Pedro A Chevere, a high ranking manager, (previous Branch Chief), stated in his deposition, that the Defendant does not use key word searches for applications for employment selection. (deposition pg. 32). Agency counsel, John Fraser, during this deposition, interfered and told Chevere what to say, in correcting his original statement. Plaintiff objected to this.
50) Chevere, in his deposition, stated since his employment of 2001, he had not seen a key word search used for application of employment. (deposition pg. 33)
51) Plaintiff applied timely to Defendant's Washington DC Hiring Event (E 10-0293-63-01-MEK.)
52) The Event was invitational by the Defendant and over 600 people were chosen to attend. Plaintiff was not chosen to attend, thus was damaged by not having the same opportunity of others in a different protected class.
53) Plaintiff applied for positions based upon his primary and secondary interests.
54) 95 people were chosen for employment under this announcement, although Defendant, through Agency counsel, John Fraser, filed court documents earlier stating that no one was hired at this event.
55) Plaintiff's secondary interest on his application was ADMINISTRATIVE.
56) 6 people were selected for employment under the Administrative category. They were earlier identified by court documents as, #20, #21, #25, #42, #51, and #93.
57) Each of the 6 people selected for employment were of a different protected class than that of the Plaintiff. This discriminatory selection caused damage to the Plaintiff.
58) Some of the 95 people chosen for employment were selected as to their secondary interest categories of employment placed in their application.
59) Plaintiff was not invited to the Washington DC job event to have the same opportunities to meet and talk with department managers and to have interviews with them or have the same opportunities to have an interview. The 6 people selected for administrative positions had different opportunities than the Plaintiff. This method of discrimination caused the Plaintiff damage. Of the 6 people chosen for Administrative positions, their secondary interest category was utilized for the selection.
60) Plaintiff's secondary interest category was not identified and utilized which caused damage to the Plaintiff.
61) Plaintiff's EEOC Complaint and Appeal alleged reprisal for prior EEO activity.
62) The reprisal continued from the original complaint process and continues to this date.
63) Plaintiff filed a formal complaint of discrimination, with Jillian Carilli, EEO Counselor, on Feb. 28, 2011. Plaintiff performed properly according to 1614 Code of Federal Regulations under Title 29.
64) Sharon Jenkins-Thomas, an independent investigator with the Defense Civilian Personnel Advisory Service (DCPAS), was assigned to the investigator for the case.
65) Carilli set up a mandatory conference call with Plaintiff, herself, and Sharon-Jenkins-Thomas for July 28, 2011 at 8:00am CST. This conference call was confirmed by email of Carilli on July 27, 2011 8:03am and a copy of it was forwarded to Kelly Whatley, an employee of the Defendant.

Plaintiff is not sure, but thinks that Carilli and Jenkins-Thomas were located in separate locations.

66) Carilli called Plaintiff on July 28, 2011 and set up a conference call. Plaintiff spoke to Jenkins-Thomas, at which time she stated that as a normal investigative technique, that she, (Jenkins-Thomas) gathered employment statistics from the proceeding 2 years of the Defendant, prior to the date of alleged discrimination.

67) Jenkins-Thomas told Defendant that under the same entry level programs, 17 people had been hired from the previous 2 year period. She stated that 13 of the 17 were black by race, 2 white by race, and 2 other by a different race. She further stated that 14 of the 17 people were female by gender, and only 3 male by gender.

68) This communication was only between Plaintiff and Jenkins-Thomas. Plaintiff asked for Carilli to come back to the phone conversation. Plaintiff asked Carilli to temporarily postpone this conference call in order for the Defendant to investigate this new information under 1614. A recorded conversation occurred with Carilli and Plaintiff and Plaintiff thinks that the conversation was recorded on Jenkins-Thomas's location but involved Carilli and Plaintiff. Plaintiff is not sure if Jenkins-Thomas was on the 3 way conference call during the conversation. Carilli agreed on record and on a recorded conversation, with the approval of Defendant's legal counsel John Fraser. This recorded conversation occurred at 10:35am CST after continual discussions were made of the new information. Plaintiff later signed a notarized affidavit of the details of the agreement with Carilli, plaintiff, and counselor John Fraser, and kept it for his records. The agreement stated that the Defendant would postpone the July 28, 2011 conference call and reset it after the Defendant had time to formally accept and investigate the new information. The Plaintiff agreed to give the Defendant a 45 day extension of time as consideration for the contract.

69) Plaintiff contends that this new information provided by Jenkins-Thomas indicated a pattern and practice case of discrimination which was a "threshold" issue of discrimination. Plaintiff contends that this pattern and practice of discrimination affected and damaged the Plaintiff.

70) This notification, to Carilli, on July 28, 2011, met the duty of the Plaintiff under 1614.105 under the Pre-Complaint Process under the Code of Regulations.

71) Plaintiff sent Carilli a letter on July 29, 2011(which was received and stamped on August 4, 2011 by Defendant) stating that Plaintiff wanted to amend the complaint based upon the "threshold" pattern and practice discrimination found on July 28, 2011. Plaintiff, in the letter, referred to the acceptance of the amended complaint, made upon the agreement on July 28, 2011. Carilli had asked Plaintiff to give the Defendant an extension of 45 days to investigate. Plaintiff agreed.

72) Plaintiff signed an extension of the time agreement sent by Carilli on July 29, 2011 12:49 via email. A hard copy was also sent via regular U.S. Mail. Defendant earlier contends that all of this never happened, however, the records indicate the truth.

73) Plaintiff, by sending this amended claim which complied with 1614.105 Code of Federal Regulations, thus formed an individual complaint under 1614.106.

74) Defendant formally dismissed all formal complaints thereafter, and before October 4, 2011, without formally accepting this new complaint or investigating it.

75) Plaintiff sent an email to Sharon Jenkins-Thomas on November 15, 2011 at 11:48 am asking her to save her investigative notes/work product/records for later use in an appeal or federal lawsuit. Jenkins-Thomas replied on email that Plaintiff should contact Carilli.

76) Plaintiff sent Angela Anderson, a manager, Department of Defense Civilian Personnel Advisory Service, an email on October 11, 2011 8:19am asking her to preserve the records of Jenkins-Thomas, to include the verbal and written agreements made between Carilli, Plaintiff, and approved by John Fraser of July 28, 2011.
77) Maureen M Elliot, Director of Intake Services, of the Defense Civilian Personnel Advisory Service, sent Plaintiff and Angela Anderson an email, on stating that Jenkins-Thomas's records were gathered and forwarded to Defendant on October 4, 2011.
78) Defendant contends that they do not know about such records.
79) Plaintiff filed a formal Appeal concerning the dismissed claims of discrimination and alleged retaliation.
80) Plaintiff sent an email to Carilli on November 15, 2011 12:04 pm formally requesting her to retain and preserve all preliminary findings and work product of Sharon Jenkins-Thomas.
81) Appeals Division of the EEOC (after several months) ordered the Defendant to proceed with 3 complaints.
82) Plaintiff reminded Carilli, on October 21, 2012. About the pattern and practice "threshold" complaint earlier amended in writing. Plaintiff again emailed Carilli about it on October 30, 2012.
83) Carilli emails Plaintiff on October 31, 2012, to state that she had not had time to review the amendment.
84) The amended complaint, at this time was 14 months old, which was plenty of time to process under 1614.
85) Plaintiff again, emails Carilli, on November 9, 2012 11:41 am, asking her act on the amended complaint. Carilli emails Plaintiff to say that she received the email and forwarded it to John Fraser.
86) Plaintiff emails Carilli, again on the issue of the "threshold" issues (amended claim), and Carilli says that she cannot provide an answer.
87) Plaintiff again sends an email to Carilli, on November 20, 2012, asking the status of the amended complaint. It was clear at this time that Defendant was stonewalling their duties, which cause the Plaintiff damage.
88) Plaintiff receives, on December 28, 2012, <u>A Notice of Receipt and Dismissal of the 3rd Amendment,</u> which was the pattern and practice "threshold" complaint. This document was signed by Sharon Taylor, and dated November 20, 2012.
89) The acceptance and dismissal was performed the same day, on November 20, 2012, on the same document. This date was the last day of the official investigation by Patricia Poindexter, who performed under her duties of the Department of Defense Civilian Personnel Advisory Service. This act of malfeasance precluded Ms. Poindexter from performing her duties and caused damage to the Plaintiff.
90) Plaintiff contends that this was in retaliation for filing earlier complaints (EEO activity) which caused Plaintiff damage.
91) Defendant violated the Code of Regulations under Title 29, Part 1614, which violated Plaintiff's constitutional rights, thus damaging Plaintiff.
92) Plaintiff sends an email to Carilli, on January 19, 2013 1:12 pm, also references receipt to John Fraser and Sharon Taylor, to preserve all records concerning the events of July 28, 2011.

93) Plaintiff was damaged by such retaliation performed by the Defendant, to include several events.
94) Plaintiff's 14th Amendment due process rights were violated, thus Plaintiff was damaged. Plaintiff's other constitutional rights were violated, which damaged Plaintiff.

H. EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES
1) Plaintiff filed a charge with the EEOC or EEO counselor on Feb. 28, 2011, and an Appeal on April 22, 2014.
2) The EEOC issued a Notice of Right to Sue Letter, dated Jan. 31, 2017.
3) Plaintiff was never hired by the Defendant, therefore, 60 days or more have elapsed since the original charge and appeal.

I. RELIEF

Plaintiff seeks monetary damage amount in excess of $750, 00.00, (to be amended with an exact figure at a later date), based upon actual, real, perceived, compensatory, pain and suffering, explanatory, and punitive damages. Plaintiff seeks attorney fees to be determined by the Court.

J. CERTIFICATE AND CLOSING

Under Rule 11, of the federal rules of civil procedure, I certify to the best of my knowledge, information, and belief, that this complaint:

1) Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation
2) Is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law
3) The factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, and
4) The complaint otherwise complies with the requirements of Rule 11

Plaintiff requests 14th Amendment Due Process Rights, as far as Plaintiff never received relevant records and information from Defendant, even after the Plaintiff proceeded with the EEOC process, including his Appeal. In other words, plaintiff request latitude in seeking and providing relevant records and communications from Defendant's agents and the associated other federal agencies involved with the Defendant and EEOC investigative process.

K.  Plaintiff agrees to provide the Clerk's office with any change to the address where case related papers may be served or delivered.

_____           Date: April 28, 2017
Ronald R. Glasgow, Plaintiff, Pro-Se


Ronald R. Glasgow

261 Sardis Rd.

Cragford, Alabama 36255

404-579-5162

Rglasgow51@yahoo.com