# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD R. GLASGOW**, Plaintiff, v. **UNITED STATES DEPARTMENT OF DEFENSE**, Defendant. | Case No. 18-cv-136 (CRC) |

## MEMORANDUM OPINION

Ronald Glasgow applied for a series of jobs with the Defense Intelligence Agency ("DIA"), a component of defendant Department of Defense ("DOD"), in 2010. When he was not hired, he filed a complaint with the DIA's Equal Opportunity & Diversity Office. He alleged that the DIA rejected his application due to his race (white), sex (male), age (54), and disability (a spinal injury), and retaliated against him for attempting to assert his rights, all in violation of various federal antidiscrimination statutes. His complaint made its way to the Equal Employment Opportunity Commission ("EEOC"), which granted summary judgment in favor of the DIA and affirmed that decision on appeal. Glasgow, proceeding *pro se*, now brings the same grievances in federal court. But because Glasgow cannot show that the agency's proffered legitimate, non-discriminatory explanation of its hiring process is pretextual, and because there is no evidence of retaliation, the Court reaches the same conclusion that the EEOC did. Glasgow is not entitled to any relief, and the Court will grant DOD's motion for summary judgment.

I. **Background**

Before setting out the relevant facts of this case, the Court should explain why it construes this motion as one for summary judgment—since that affects what facts and evidence the Court can consider at this stage in the litigation.

The DOD has moved either to dismiss the case or for summary judgment. The critical difference is that a motion to dismiss, in the usual case, concerns exclusively the plaintiff's complaint. All the Court must consider is whether, taking plaintiff's factual allegations in the complaint as true, he has alleged sufficient facts to give rise to a colorable legal claim. A motion for summary judgment, by contrast, ordinarily comes *after* the parties have developed an evidentiary record through discovery. The Court then must consider whether, on the basis of that record, either party is entitled to judgment as a matter of law.

The Court concludes this motion is best construed as one for summary judgment. The EEOC permits a complainant who requests a hearing to conduct discovery. Here, Glasgow was given 75 days to conduct discovery, see Def's Motion to Dismiss ("MTD"), Ex. A ("EEOC Decision") at 3-4, ECF No. 35-3, and he took that opportunity, including by deposing multiple DOD employees and one of the women the agency hired instead of him, see Pl's Opp., Exs. H-K at 63-83.[1] That explains why the administrative judge's decision in the EEOC proceeding was styled as a summary judgment decision—one based on a developed evidentiary record—and not a dismissal. EEOC Decision at 23. Moreover, the parties' arguments here go well beyond the face of the complaint and rely extensively on the record developed in the EEOC proceeding.

---

[1] The "EEOC Decision" refers to the summary judgment decision by EEOC administrative judge Mason Barrett. That decision can be found in the record at ECF No. 35-3, beginning at "Enclosure 1" (on page 8 of the ECF document). All cited page numbers refer to the page numbers of the EEOC decision itself, not to the entire ECF entry.

Though Glasgow would still be entitled to additional discovery if he showed that he is unable to "present facts essential to justify [his] opposition," he must establish that through "affidavit or declaration." Fed. R. Civ. P. 56(d). He has not done so. In light of all this, the Court will construe the DOD's motion as one for summary judgment, based on the evidentiary record developed in the EEOC proceeding. Now, to the facts as they were developed in that proceeding.

In early 2010, the DIA solicited applications on USA Jobs, the public-facing website of the U.S. Office of Personnel Management, for several vacancies. EEOC Decision at 5. Thousands applied, including Mr. Glasgow, who submitted applications for various positions, including Drug Program Specialist, Nuclear Physicist, Intelligence Officer, and Security Guard. Id. at 6. At the time of his application, Glasgow, a white male, was 54 years old and suffering from a spinal cord injury. Glasgow attempted to apprise the agency of these facts by sending letters that communicated as much to the DIA's human resources department and to its equal employment opportunity office after he applied. See Pl's Opp., Exs. A-B at 18-22.

Ultimately, the agency did not select Glasgow for any of the positions he sought, nor did it invite him to participate at a hiring fair. Shortly after he learned of this, in February 2011, Glasgow filed a complaint with the DIA Equal Opportunity & Diversity Office. DIA Notice of Final Agency Action ("DIA Notice of FAA") at 1. Glasgow complained of seven discrete instances of discrimination and retaliation. Id. at 1-2. Though it is unclear which of the DOD's acts Glasgow believed constituted bare discrimination versus retaliation, the basic premise underlying each incident was Glasgow's belief that the agency opted for less qualified—but younger, female, and disability-free—candidates.

In October 2011, the DIA dismissed all seven claims. Id. at 2. Glasgow appealed that decision to the EEOC in December 2011, and the EEOC remanded three of the seven claims to the agency for further investigation in August 2012. Id. The three remanded claims focused on Glasgow's non-selection for the Drug Program Specialist, Nuclear Physicist, and Intelligence Officer positions, and the fact that he was not invited to participate in a hiring fair for a security position. Id.; EEOC Decision at 3. In February 2013, the Investigations and Resolutions Directorate of the Civilian Personnel Management Service provided Glasgow with its report, and Glasgow quickly requested a hearing before an EEOC administrative judge. Id. In May 2013, the administrative judge assigned to the case gave the parties 75 days to conduct discovery and supplement the investigative record. EEOC Decision at 3-4.

The DOD moved for summary judgment in December 2013, and Glasgow filed his opposition in January 2014. Id. The DOD contended before the EEOC (as it does here) that its hiring processes for the positions at issue make Glasgow's version of events impossible. According to the agency's description of that process, once it concluded its collection of resumes, it put them into a single "talent pool" database; a panel of agency employees sorted through the resumes by conducting keyword searches that matched resumes with particular job descriptions; the search terms included only qualifications listed in the agency's job descriptions and did not include race, sex, age, or disability; and the panel members then reviewed the resumes yielded by that search to arrive at a final slate of 10 candidates to refer to the selecting official. EEOC Decision at 8-10 (citing testimony from the administrative record). The agency further stated that Glasgow's resume was not selected and thus was never even reviewed by a selecting official. Id. at 10. The agency offered a similarly benign explanation for its decision not to invite Glasgow to the hiring fair. Id. at 14-16 (hiring manager stating that Glasgow's

4

application was rejected because his two most recent jobs fit poorly with security work and that he had no knowledge of Glasgow's protected characteristics).

The administrative judge sided with the DOD. EEOC Decision at 23. He found "no evidence in the record that any Agency employee or member of the Panel considered age, race, sex, or disability in connection with any resume." Id. at 9; see also id. at 16 (finding "no evidence in the record that any person was aware of or considered [Glasgow's] race, age, sex, or disability in connection with the job fair"). The administrative judge further concluded that the individuals the agency did hire were as (if not more) qualified than Glasgow. Id. at 20. Accordingly, he concluded that the DOD had "articulated[] legitimate, non-discriminatory reasons for its actions," and that Glasgow had failed to show those reasons were pretextual. Id.

After an unsuccessful administrative appeal, Glasgow headed to federal court.[2] While Glasgow's EEO complaint identified seven discrete instances of discrimination or retaliation, his complaint in this Court focuses on just three. The first is his non-selection for an entry-level Drug Program Specialist position on April 30, 2010. Complaint at 2-3, 9-13. The second is the agency's decision not to invite Glasgow to participate in a job fair. Id. at 13. And the third is the agency's alleged retaliation against him for notifying it of his membership in various protected classes. Id. at 13-16. Glasgow alleges that these acts variously violate Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Rehabilitation Act, 29 U.S.C. § 791(f). See Complaint at 8-9; Def's MTD at 1. The DOD has moved to dismiss the complaint, or, in the alternative, for summary

---

[2] Glasgow originally filed suit in the Northern District of Alabama, where he resides. That court transferred the case here on the government's motion to dismiss for improper venue, among other grounds. See ECF No. 27.

5

judgment. Glasgow has opposed the motion, and the matter is now ripe for the Court's resolution.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A party moving for summary judgment must "show[] that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the Court must accept as true the evidentiary submissions of the party opposing summary judgment and must also draw "all justifiable inferences" in their favor. Id. at 255.

## III. Analysis

### A. Discrimination Claims

Glasgow's essential grievance is that the DOD cast his application aside because he is an older, white, disabled man. The Court takes a different view, and for the reasons that follow, will grant summary judgment to the DOD.

In cases where the plaintiff can adduce no direct evidence of discrimination, as is true here, the Court applies the burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Clipper v. Billington, 414 F. Supp. 2d 16, 21 (D.D.C. 2006). Under the McDonnell Douglas framework, the plaintiff "must first establish, by

a preponderance of the evidence, a prima facie case of discrimination." Id. (quotation omitted). If the plaintiff does so, the defendant must then identify a "legitimate, nondiscriminatory reason" for the challenged action. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). But where the employer has asserted such a reason, the D.C. Circuit has instructed district courts to skip the prima facie question at step one and instead answer "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee[?]" Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (deriving rule from U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)); see also Baloch v. Kempthorne, 550 F.3d 1191, 1196, 1198 n.2 (D.C. Cir. 2008) (applying Brady to discrimination claims under Title VII, the ADEA, and the Rehabilitation Act).

The DOD has offered a legitimate, non-discriminatory explanation for its decision not to hire Glasgow. It explained that it selected applicants for the positions for which Glasgow applied using key word searches to match resumes with certain positions; that its personnel only searched for qualifications listed in the job descriptions and did not filter for race, sex, age, or disability; that this process yielded several resumes, none of them Glasgow's; and that no agency employee ever reviewed any part of Glasgow's resume. Def's MSJ, Ex. 2, Statement of Material Facts To Which There is No Genuine Dispute; EEOC Decision 8-10. The agency's explanation for why it did not invite Glasgow to the hiring fair also raises no red flags. EEOC Decision at 14-16 (hiring manager stating that Glasgow's application was rejected because his two most recent jobs fit poorly with security work and that he had no knowledge of Glasgow's protected characteristics). With these non-discriminatory explanations before it, the Court, following

Brady, goes directly to the critical question: Has Glasgow produced evidence sufficient for a jury to conclude that the DOD's explanations are pretextual and that it actually intentionally discriminated against Glasgow on the basis of some prohibited characteristic? See 520 F.3d at 494. In a word: No.

The best Glasgow can do is cite testimony that could be taken to suggest that DOD is wrong about the use of blind keyword searches during the panel process. For instance, Glasgow references deposition testimony by DIA employee Pedro Chevere that the agency did not use key word searches in its hiring process. See Pl's Opp. at 80-83 ("Exhibit J").[3] But it appears that Mr. Chevere was simply confused by Glasgow's question, since he quickly clarified that the agency's "entry-level panel"—the type of panel that sorted through applications for the positions for which Glasgow applied—"used to use a keyword search." Id. at 83. This isolated and equivocal piece of testimony does not create a genuine dispute of material fact regarding the agency's hiring process. The record instead bears out the administrative judge's conclusion that the agency used keyword searches to mine the resume database for applications that fit the job description, EEOC Decision at 9, and that the agency was totally unaware of Glasgow's "age, race, sex, or disability" in making its hiring decision, id. at 8. That conclusion was based on testimony by Noemi Pizarro-Hyman, who managed the team of employees that chose the batch of resumes to send to the selecting official, id., and on testimony by Curtis Peterson, the selecting official who made the final hiring decision, id. at 11. Glasgow has offered no good reason to doubt the accuracy of their testimony. He thus comes up far short of demonstrating, as he must,

---

[3] The DOD says Glasgow provided "no evidentiary support for [this claim] at all," but it appears instead that Glasgow provided the wrong citation to the docket. His citation is to an attachment to his *complaint*, but the Court found the documentary support to which he was referring as an addendum to his *opposition* to the DOD's motion to dismiss.

"*both* that the [DOD's asserted] reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Glasgow's last best hope to salvage his discrimination claims is to argue that the agency's hiring practices had a disparate impact on individuals with his characteristics—older white men with a physical disability. Glasgow contends that the fact that the agency hired or interviewed four young and apparently disability-free people for the positions he sought establishes a viable disparate impact claim. See Complaint at 1; Pl's Opp. at 8. This argument also fails.

"Disparate impact claims involve employment practices that are 'facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" Breen v. Chao, 253 F. Supp. 3d 244, 264-65 (D.D.C. 2017) (quoting Aliotta v. Bair, 614 F.3d 556, 561 (D.C. Cir. 2010)). While disparate impact claims relieve plaintiffs of the burden of proving "discriminatory intent or animus," plaintiffs still are "responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." Id. at 265 (quotation omitted). This Glasgow does not do. Instead, he complains generally about the DOD's "'blind' application system" as a whole and the fact that it led to hiring or at least interviewing four younger candidates instead of him. Pl's Opp. at 8. Because Glasgow does not identify what "specific employment practice" led to people with his protected characteristics getting passed over for jobs, his disparate impact argument fails. Breen, 253 F. Supp. 3d at 266.

Because Glasgow is unable to show that the DOD's hiring practices were either intentionally discriminatory or had a disparate impact on a protected population, his employment discrimination claims under Title VII, the ADEA, and the Rehabilitation Act fail. Accordingly, the Court will enter summary judgment in favor of the DOD on those claims.

B. Retaliation Claim

Glasgow next contends that the DOD retaliated against him for taking steps to assert his rights under Title VII. The Court disagrees and will grant summary judgment to the DOD.

Title VII prohibits retaliation against a job applicant because the applicant has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3. "To make out a prima facie case of retaliation, a plaintiff must show that '(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.'" Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007)).

Glasgow seems to advance two retaliation theories, but neither works. First, he says he engaged in protected activity when he filed an EEO complaint. See Pl's Opp. at 5. While that indeed constitutes protected activity for which an employer cannot lawfully retaliate, Glasgow filed his complaint *after* he suffered the adverse employment action—not getting selected for the job. Id. (showing that EEO activity postdated hiring decision). That means there is no "causal link between the protected activity and the adverse action." Hamilton, 666 F.3d at 1357. Second, Glasgow suggests that his letters to the DOD, in which he informed DOD that he was protected under the Americans with Disabilities Act, see Pl's Opp., Exs. A-B at 18-22, constituted protected activity. Not so. Title VII prohibits retaliation for making a charge, testifying, assisting, or participating in an EEO investigation or proceeding, 42. U.S.C. § 2000e-3; simply informing an employer of your membership in a protected class does not fall within those activities.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment. A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>November 9, 2018</u>